[Civ. No. 4535. First Appellate District, Division One.—September 6, 1923.]

## J. PLUNKETT DILLON et al., Respondents, v. JOHN A. QUALLS, Appellant.

[1] NEGLIGENCE — AUTOMOBILE COLLISION — INJURIES TO WIFE — ALLEGED CONTRIBUTORY NEGLIGENCE OF HUSBAND — EVIDENCE. — In this action for damages for personal injuries sustained by a wife when an automobile driven by her husband in which she was riding was struck by defendant's automobile, the evidence does not show that the husband was, as a matter of law, guilty of contributory negligence, which is imputable to his wife and bars recovery.

--------

1. Negligence of driver of automobile as imputable to occupant or guest, notes, 19 Ann. Cas. 1225; Ann. Cas. 1913B, 684; Ann. Cas. 1915B, 769; Ann. Cas. 1916E, 268; Ann. Cas. 1918B, 841; Ann. Cas. 1918C, 961.

APPEAL from a judgment of the Superior Court of Alameda County. J. G. Quinn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Strother P. Walton for Appellant.

Will S. Robenson for Respondents.

ST. SURE, J.—This is an action by J. Plunkett Dillon and Rita Dillon, husband and wife, to recover damages for injuries sustained by the wife, occasioned by the collision of an automobile with that of defendant.

Plaintiffs' complaint alleged a cause of action against defendant for negligence. Defendant, in his answer, denied that he was negligent, and specially pleaded as a defense contributory negligence on the part of Mr. Dillon. Upon these issues the case was tried before and submitted to a jury. The jury found in favor of the plaintiffs and fixed damages in the sum of twenty-five thousand dollars. Upon motion for a new trial the superior court ordered that ten thousand dollars of the judgment entered upon the verdict be remitted or a new trial would be granted. Plaintiffs remitted all damages in excess of fifteen thousand dollars, whereupon the court denied the motion for a new trial, and judgment for the sum of fifteen thousand dollars was entered in favor of plaintiffs and against defendant. From this judgment defendant appeals, upon the sole ground that the evidence shows that the contributory negligence of plaintiff J. Plunkett Dillon bars both himself and his wife from a recovery.

The accident occurred at or near the intersection of San Pablo with Park Avenue in the city of Emeryville. San Pablo Avenue is the main highway running in a northerly direction from Oakland to Richmond, passing through Emeryville. Park Avenue runs from the waterfront in Emeryville in an easterly direction to its point of intersection with San Pablo Avenue, but does not extend beyond San Pablo Avenue. Mr. Dillon was driving his automobile, in which his wife and three children were passengers, southerly along San Pablo Avenue. Defendant was driving his

automobile northerly on San Pablo Avenue, immediately behind a truck.

Counsel for defendant says that "on the question of the course that defendant took and where the accident occurred, there was a sharp conflict in the testimony. The jury has resolved this in favor of plaintiffs. . . . We must conclude that the finding of the jury that defendant left his own side of the street and the wreck occurred on the westerly side of the avenue finds support in the evidence."

[1] Notwithstanding the finding of the jury that the defendant was guilty of negligence, it is claimed that the evidence, particularly the testimony of plaintiff and his wife, shows that the plaintiff husband was, as a matter of law, guilty of contributory negligence, which is imputable to the plaintiff wife and bars recovery.

We turn to the transcript of the testimony. George Gilmore, a disinterested witness, who was standing at the northwest corner of the intersection, had a clear view of the accident, and he described it as follows: "There was a truck, a big truck coming up San Pablo Avenue towards Richmond, and there was another machine a little to the outside coming in the same direction. The truck started to make this turn down Park Avenue, and the man driving the machine behind him instead of his turning to his right towards the curb, he had plenty of room to keep on his way —but instead of that he turns to the left over on the wrong side of the street and he cut in front of the truck just the other side of the truck as the machine coming from Richmond toward Oakland came, and they collided right there."

S. Garbutt, another disinterested witness, testified: "Well, I saw the truck make the turn, and I saw this other car cut in in front of it." He also testified that at the time the truck made the turn and the defendant's car started to swing around, there was ample fairway to have continued on along the right-hand side of San Pablo Avenue.

Defendant himself testified: "I saw Dillon's car before I started around the truck."

Mr. Dillon testified in part as follows: "When my wife called out, 'Look at that big car!' Well, I looked over to the left—of course, a man driving a car would—and I saw there was nothing there coming for me—the truck was pretty well getting in front now, and when I just about

entered my—I guess—I think my wheel just about entered the safety zone near the intersection of Park Avenue, I saw the defendant's car loom away over on my right in front of the truck that was going down Park Avenue, and I put my brakes—he was coming across trying to regain his side; right-driving side, on San Pablo, cutting in on this southern, south-bound traffic, and I tried to put my—I put my brakes on, and brought my foot-brake on, but it was too late. He was coming, and so great was the peril, the peril was so great and the situation was so swift, so fast, that he came in front of the truck and cut into the south-bound traffic, of which—where I was going—the peril was so great that—I am not going to use any levity, but it would seem to me that three things could be done to avoid that accident: one would be to go up into the air, the other would be to go down into the floor, and the other would be to dissolve into the air. That is just how the situation appeared to me —I, with my little cargo of human lives—and I put my brake on. Had I veered over to the left, he would have struck me, and the speed at which he was going he would have struck me in the middle of my car, and we would have all been cut to pieces; and had I gone to the right—now, then, it seemed to me that the only thing I could do was just to throw on my brake, which I did. . . ."

Defendant contends that Mr. Dillon was not watching the road, and that he did not see the defendant's car until his wife called his attention to it. Mrs. Dillon explains this by stating that she was sitting on the right, her husband on the left hand of the car in which she was a passenger, and that the defendant's car came into her view sooner than it did her husband's. Dillon testified that while driving he was looking ahead; that he saw the truck to the right of him; that as soon as he saw defendant's car he applied the brakes.

Automobile accidents usually happen in the twinkling of an eye. Generally the situation is "swift" and "fast," as described by Mr. Dillon. Mr. Dillon was not expecting a car to "cut in front" from behind the truck, and he had a right to assume that anyone driving at the rear of the truck would obey the law of the road and confine his driving to the right-hand side of the highway. It was therefore a

question for the jury to determine, under all of the circumstances, whether Mr. Dillon's vigilance was what it should have been.

Defendant comments upon the speed at which Mr. Dillon was driving. Mr. Dillon testified that he was going about fifteen miles per hour. Defendant said he thought Mr. Dillon was "going twenty or twenty-five miles per hour." Mrs. Dillon was of the opinion that her husband was driving at less than fifteen miles—it might have been twelve miles, an hour. She says she noticed the speedometer. Upon this evidence, and geometric calculations, it is contended that the Dillon car was exceeding the limit of fifteen miles an hour in approaching or traversing an intersection. (Sec. 22, Motor Vehicle Act [Stats. 1915, p. 409, as amended by Stats. 1917, p. 404].) Counsel for defendant endeavors to demonstrate by mathematical calculations, based upon casual observation of witnesses as to the distance traveled by the Dillon car within a given period of time, that Mr. Dillon was driving at an excessive rate of speed. Such testimony, and the consequences, may serve as matter for argument before a jury, but the idea that thereupon, in a given case, the rate of speed of an automobile may be established, is fallacious. Testimony growing out of perception and memory shows an almost unaccountable variation. Rarely does a witness see clearly and report accurately. Take any case where an automobile accident is the subject of inquiry. Two persons from the same vantage ground witness a collision. They are called to testify at the trial. Admittedly each is disinterested, and each is endeavoring to tell the truth. Upon the question as to how far each car traveled before the collision occurred, one witness will swear ten, the other fifty, feet. Measurements show that both are mistaken. Upon the question as to how long after the cars were first seen the impact took place, one will say one minute and the other will say five minutes, when, as a matter of fact, the cars crashed together in a second. It is the same with testimony as to speed, one witness saying one car was going very fast, the other, slow, while witness number two is positive that one car was going at less than ten miles an hour and the other car was standing still.

Clearly, then, the question of speed was one for the jury to determine.

In support of his contention that Mr. Dillon was guilty of contributory negligence, counsel for defendant cites *Ogden* v. *Lee,* 61 Cal. App. 493 [215 Pac. 122]. In that case the plaintiff Ogden, a pedestrian, while crossing a thoroughfare at night, saw the lights of an approaching automobile and had ample time to avoid an accident by pausing a few seconds. But he chose to proceed across the highway until he was struck. In affirming a judgment of nonsuit, this court held that plaintiff Ogden, under the circumstances shown, failed to measure up to the standard of conduct which the law requires of a person voluntarily placing himself in a position of peril. In the instant case these facts stand out in bold relief: Plaintiff Dillon was driving his automobile southerly along the right side of San Pablo Avenue. Defendant was driving his car northerly on the right side of the same highway. A truck preceded defendant. The three vehicles approached the intersection. The truck turned westerly on to Park Avenue. As the truck turned defendant changed his course to the left, ''speeded up,'' passed in front of the truck, and while on the left (for him wrong) side of the highway met plaintiffs' car in collision. Mr. Dillon did not see defendant's car until it emerged from behind the truck and appeared directly in his path; and then he applied his brakes. Defendant saw Dillon's car before he changed his course, and he had opportunity to confine his travel to the right side of the highway with safety. It will thus be seen that the facts in *Ogden* v. *Lee* and the case before us are quite different.

It was within the province of the jury to make any logical, reasonable deduction which the facts permitted. It was the privilege of the jury to infer from all the facts and circumstances shown that the injury to Mrs. Dillon was caused through the negligence of defendant; that the proximate cause of the accident was defendant's act in violating the rules of the road by going upon the left of the highway and passing a turning truck at an intersection; that the plaintiff Dillon was driving his car in a prudent and careful manner and was not guilty of contributory negligence.

It therefore follows that the judgment should be affirmed. It is so ordered.

Tyler, P. J., and Richards, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 5, 1923.